FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 07 2025    RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## ~~EASTERN~~ Western DISTRICT OF WASHINGTON
### AT ~~YAKIMA~~ Seattle

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER, | NO. 2:25-cv-00617-RAJ |
| Plaintiff, | COMPLAINT AND JURY DEMAND |
| v. | **Filed Under Seal** |
| PODWORKS CORP., a Washington Company, and affiliated and associated companies, | pursuant to 31 U.S.C. § 3730(b)(2) |
| Defendant. | |

## NATURE OF THE ALLEGATIONS

1.    Relator brings this action on behalf of itself and the United States of America against Defendant(s) for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.    This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.    Defendant and any associated companies grow and sell marijuana. That is, they manufacture THC, which is a Schedule I drug.

4.    Defendant Podworks took out a first draw PPP loan for $300,000 even though it is in an industry which is illegal under federal law, making it ineligible for CARES Act loans. It later sought and obtained forgiveness.

COMPLAINT AND JURY DEMAND - 1

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

5.      Cannabis producers such as Defendant generally experienced increased sales during the pandemic and, in line with SBA guidance, most did not apply for PPP loans. Defendant, however, disregarded this guidance and took funds anyway—securing an unfair advantage over competitors and diverting relief money from industries in genuine need. Ultimately, other Washington small businesses were harmed as a result.

6.      Relator is the founder of a legal technology company specializing in intellectual property theft detection and management. In that role, he has gained extensive experience in digital investigations, evidence gathering, and corporate fraud. He also holds a certificate in forensic accounting and fraud examination as well as a specialization certificate in digital forensics.

7.      Relator used his digital investigative experience to identify the fraud described herein.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

9.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as Defendant(s) transact business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

10.      Relator Daniel Foster is an American citizen living in Germany.

11.      Defendant Podworks Corp. ("Podworks") is a Washington Corporation, registered with the secretary of state as having a principal office at 19705 60th Avenue Northeast, Arlington, Washington.

12.      Podworks is a managed entity which may be related to and affiliated with other entities and owned and operated by Thomas Werth and possibly others.  According to Washington state records, Podworks does business under the name "Top Shelf," and may do business under other names as well.  Podworks has claimed it has approximately 20 employees, including workers who

COMPLAINT AND JURY DEMAND - 2

1  are paid to grow and distribute marijuana products under the "Top Shelf" brand, the "Lush Leaf

2  Cannabis" brand, the "It's Just Fire" brand, and others. Owners and affiliated entities are placed

3  on notice by this reference that they are also likely liable for the actions of Podworks alleged

4  herein. References to Defendant or Defendants or Defendant(s) herein refer to these entities in

5  addition to the named entity, Podworks Corp.

6  ## THE PAYCHECK PROTECTION PROGRAM

7  13.    During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and

8  Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program

9  called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small

10  Business Administration ("SBA") to provide economic relief to small businesses nationwide

11  adversely impacted by the coronavirus pandemic.

12  14.    Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the

13  PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal

14  amount of qualifying loans guaranteed under the PPP.

15  15.    The CARES Act gives lenders delegated authority to process loan applications for PPP

16  funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine

17  eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided

18  by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

19  16.    Lenders were compensated by the federal government via processing fees based on the

20  balance of the financing outstanding at the time of final disbursement, in the following amounts

21  for first draw loans:

22     • Five (5) percent for loans of not more than $350,000;
       • Three (3) percent for loans of more than $350,000 and less than $2,000,000;
23        and
       • One (1) percent for loans of at least $2,000,000.
24

25

COMPLAINT AND JURY DEMAND - 3

17.    For second-draw loans, lender processing fees were as follows:

- Fifty (50) percent or $2,500, whichever is less, for loans of not more than $50,000;
- Five (5) percent for loans of more than $50,000 and not more than $350,000; and
- Three (3) percent for loans above $350,000.

See https://home.treasury.gov/system/files/136/Updated-Guidance-PPP-Lender-Processing-Fee-Payment-1502-Reporting-Process.pdf

18.    Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

19.    Each company was only allowed to count each employee once per loan, and only allowed to apply for and obtain one loan per company.  This limitation was outlined in the U.S. Department of the Treasury's Paycheck Protection Program Information Sheet, which stated: "How many loans can I take out under this program? Only one." See https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

### FACTUAL ALLEGATIONS

20.    Podworks, is a producer and processor of marijuana located in Arlington, Washington.

21.    Podworks has held licenses for these activities since 2016. Its registered trade names include, but are not limited to "E-Joint," "Lush Leaf Cannabis," and "Top Shelf Cannabis."

22.    In 2019 and 2020, Podworks held Washington trademarks for names such as "Clear Blunt," "Bedtime Brownie," and "Topshelf Pounder."

23.    In a 2017 review on Indeed.com, a former employee wrote, "My day involved trimming/packaging plant material."

24.    A 2024 inspection conducted by the Washington Department of Labor & Industries noted the presence of multiple "grow rooms", stating:

COMPLAINT AND JURY DEMAND - 4

TOP SHELF did not ensure that the employees working inside the grow rooms were notified orally or by posting warning signs or both as needed when a pesticide application will be carried out in the grow rooms.

25.     The principal business activity of Podworks is clearly the production and sale of marijuana products.

26.     Top Shelf, as of the time of this writing, has a website at topshelfwa.com which states at topshelfwa.com/about-topshelf "About Top Shelf Cannabis™ … We are a Washington I-502 Tier 3 producer-processor located in Arlington …."

27.     Washington Initiative 502 (I-502) established a system, overseen by the Washington State Liquor Control Board, to license, regulate, and tax the production, processing and wholesale retail sales of marijuana.

## A.     The Podworks Loan

28.     On May 15, 2020, Podworks Corp. was approved for a first-draw PPP loan of $300,000.00 through American Express National Bank (loan number 6981717402).

29.     Podworks listed 38 jobs on its application.

30.     Podworks also listed an address of 19705 60th Avenue Northeast, Arlington, WA 98223.

31.     Podworks classified itself under NAICS code 111998 (All Other Miscellaneous Crop Farming).

32.     On November 17, 2020, Podworks applied for loan forgiveness. The SBA granted forgiveness of $301,479.00 on December 16, 2020.

33.     The SBA also paid American Express National Bank a lender processing fee of $15,000.00 in connection with the loan.

## B.     Defendant Knew or Recklessly Ignored Ineligibility

34.     On information and belief Defendant's provided information to applicants regarding SBA standards for eligibility for PPP loans on its website and in the application process.

COMPLAINT AND JURY DEMAND - 5

Teller Law
300 Lenora Street, #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

35.    SBA provided information, including on the loan application itself, which would have led a reasonable person to check the standards for eligibility for PPP loans.

36.    Through this and other sources, Defendant(s) knew or should have known that the CARES Act barred receipt of PPP loans by a marijuana business.

37.    In the face of such notice and knowledge, failure to review and confirm eligibility for PPP loans was reckless and/or intentional as that term is defined under the false claims act.

**C.    Defendant's Loan Was Unlawful**

38.    Version one of the PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

> The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
>
> The Applicant is not engaged in any activity that is illegal under federal, state or local law.
>
> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

39.    All other versions of the form contained the same or similar language.

40.    Podworks must have made these certifications for it to receive PPP funding.  Those certifications were false statements and were material when made.

41.    At all relevant times, Podworks (including any affiliated businesses) was a Direct Marijuana Businesses and/or Indirect Marijuana Businesses (collectively, Marijuana-Related

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

1    Businesses), as defined by the SBA (see below), and, thus, were not eligible to receive a PPP

2    loan.

3    42.    Effective April 1, 2019, the SBA issued SOP 50 10 5(K), which set forth requirements for

4    lenders seeking to participate in SBA lending programs. This SOP "[i]ncorporated policy changes

5    included in SBA Policy Notice 5000-17057 concerning the eligibility of marijuana-related

6    businesses," which explained that business engaged in illegal activity—including "Applicants

7    that make, sell, service, or distribute products or services used in connection with illegal activity,

8    unless such use can be shown to be completely outside of the Applicant's intended market"—are

9    ineligible for SBA loans.

10    43.    Specifically, Direct Marijuana Businesses, Indirect Marijuana Businesses, and certain

11    Hemp-Related Businesses were ineligible for SBA loans because "federal law prohibits the

12    distribution and sale of marijuana, financial transactions involving a marijuana-related business

13    would generally involve funds derived from illegal activity. Therefore, businesses that derive

14    revenue from marijuana-related activities or that support the end-use of marijuana may be

15    ineligible for SBA financial assistance."

16    44.    On August 2, 2019, the SBA issued Information Notice Control No. 6000-19005, Subject:

17    Guidance on Grantees Providing Assistance to Marijuana-Related Businesses. Control No. 6000-

18    19005 loosened restrictions on hemp-related businesses but retained exclusions on marijuana-

19    related businesses:

20        Because federal law prohibits the distribution and sale of marijuana, financial
          transactions involving a marijuana-related business would generally involve funds
21        derived from illegal activity. Therefore, businesses that derive revenue from
          marijuana-related activities or that support the end-use of marijuana may be
22        ineligible for SBA-funded technical assistance. The question of whether a
          particular business is eligible for assistance under an SBA program must be
23        determined on an annual, case-by-case basis and depends upon the nature of the
          business' specific operations.
24

25        A Direct Marijuana Business is a business that grows, produces, processes,
          distributes, or sells marijuana or marijuana products, edibles, or derivatives,
          regardless of the amount of such activity. This applies to recreational use and

COMPLAINT AND JURY DEMAND - 7                          **Teller Law**
                                                       300 Lenora Street, #1471
                                                       Seattle, WA 98121
                                                       (206) 324-8969   steve@stellerlaw.com

medical use even if the business is legal under local or state law where the applicant business is or will be located.

An Indirect Marijuana Business is a firm that derived any of its gross revenue for the previous business year (or, if the firm is a start-up, projects to derive any of its gross revenue for the next business year) from sales to Direct Marijuana Businesses of products or services that could reasonably be determined to aid in the use, growth, distribution, enhancement or other development of marijuana. Examples of Indirect Marijuana Businesses include firms that… Sell smoking devices, pipes, bongs, inhalants, or other products primarily designed, intended, or marketed to facilitate marijuana consumption.

…

Finally, as to the issue of Cannabidiol (CBD) and products containing CBD, in practice CBD may be derived from either marijuana or hemp. When CBD is derived from marijuana, it is a Schedule 1 controlled substance under the Controlled Substances Act (21 U.S.C. § 801 et seq.). This means that firms, that develop or market CBD and CBD products derived from marijuana, would be considered Direct Marijuana Businesses as defined above and would thus not be eligible to participate in SBA technical assistance programs.

45.     Manufacture of marijuana and/or THC is in violation of 21 USC §801 et seq., the Controlled Substances Act.

46.     Defendant(s) manufacture THC by growing marijuana.

47.     At the beginning of the PPP program, the SBA further clarified that marijuana-related businesses would not be eligible for PPP funding. For example, on March 23, 2020, in response to a question "Are cannabis companies eligible?" for EIDL loans, the SBA tweeted from its @SBAPacificNW account: "With the exception of businesses that produce or sell hemp and hemp-derived products (Agriculture Improvement Act of 2018, Public Law 115-334), marijuana-related businesses are not eligible for SBA-funded services (OMB, 2 C.F.R. § 200.300)."

48.     In response to a follow-up question about the cited regulation, the SBA tweeted "[The regulation] says 'to ensure that federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements.' In short, it's because marijuana is not federally legal & SBA is a federal agency."

COMPLAINT AND JURY DEMAND - 8

49.     Interim Final Rule, 85 FR 20811, effective April 15, 2020 but first published by the SBA on April 2, 2020, stated "You are ineligible for a PPP loan if, for example... [y]ou are engaged in any activity that is illegal under Federal, state, or local law."

50.     The PPP loan application filed by Podworks included false statements material to the receipt of the loan, and eventual forgiveness of the loan, including that it does not engage in illegal activity.

51.     The PPP loan application filed by Podworks fraudulently induced the lender to provide the loan, which in turn caused the United States to pay processing fees identified above.

52.     At the very least, after it was approved for the PPP loan, Podworks should have been alerted by subsequent guidance issued by the SBA that it had been ineligible for PPP funding and should have repaid its loan instead of seeking and receiving loan forgiveness.

53.     Instead, Podworks not only kept the PPP funds, but applied for and received forgiveness of those funds under false pretenses, damaging the United States in the amount of the loan plus interest.

54.     These actions were taken at the direction and under the supervision of Podworks's owners and affiliated companies.

## COUNT I
### VIOLATIONS OF 31 U.S.C. § 3729–FEDERAL FCA

55.     Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

56.     As set forth above, Defendant(s) knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

57.     As set forth above, Defendant(s) knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

COMPLAINT AND JURY DEMAND - 9

58.    As set forth above, Defendant(s) knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

59.    Due to Defendant(s)' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

60.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

### PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant(s):

On behalf of the United States:

a)    awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b)    awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c)    awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d)    awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

e)    granting such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

COMPLAINT AND JURY DEMAND - 10

1  DATED this 5th day of April, 2025.

Stephen A. Teller, WSBA #23372
Attorney for Relator Daniel Foster

COMPLAINT AND JURY DEMAND - 11

**Teller Law**
300 Lenora Street, #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com